STATE of Minnesota, Respondent,

v.

Mark L. HATTON, Appellant.

No. C5–85–2118.

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 13, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Mark L. Hatton appeals from his conviction for first degree criminal sexual conduct, kidnapping, and third degree assault in violation of Minn.Stat. §§ 609.-342(c), 609.25, subds. 1(2), 2(2) and 609.223 (1984 & Supp.1985). Hatton was sentenced to concurrent prison terms of 130 months for criminal sexual conduct, 32 months for kidnapping and one year and a day for assault. We affirm.

## FACTS

On June 29, 1985, B. McB. went to an after hours party, met appellant and went outside to his car to talk with him. Before leaving with appellant, McB. expressed to a friend that she did not trust appellant. Following 10–15 minutes of conversation, appellant abruptly drove away from the curb and stopped around the block. He then attempted to kiss McB., but was quickly rebuffed.

Appellant then drove back to the party and McB. attempted to find her friend but was informed by Michael Garry and William Hatton (appellant's brother) that her friend had already left. William Hatton assured McB. that he would make certain she got home. All four then got in the car. William Hatton drove and McB. sat in the front seat because she was afraid of appellant. McB. gave her north Minneapolis address to William Hatton, but he missed the correct turn twice.

As the car approached a stop light, Garry slid out the front passenger window and climbed on to the roof. He got down when the car stopped, and opened the door so McB. could get out of the car. Garry began to walk away and McB. followed him at a short distance. McB. saw appellant who also got out of the car jump up and kick Garry from behind, knocking him to the ground. McB. then proceeded to walk in the opposite direction.

An employee at a nearby business witnessed appellant assaulting Garry. After the employee called to appellant to stop, appellant returned to his car and left. Garry was treated at the hospital for injuries which included a fractured humerous bone.

After leaving Garry, appellant and William Hatton followed McB. in their car. Appellant asked McB. to get in his car and when she refused, he grabbed her, twisted her arm back, forced her into the car, and covered her head with a jacket. According to McB., appellant and William Hatton then took turns engaging in nonconsensual intercourse with McB. as they drove around. They then tied her hands with cloth from her skirt and placed her into the trunk of another car. Eventually they went to the Parkway Motel. In a room registered in appellant's name, he and his brother sexually assaulted McB. while her hands were tied and her head was covered with a blanket.

After the sexual assault, McB. escaped and went into an adjoining room where a maid called the police. Upon arrival, the police observed McB. to be bruised, dirty, and shaken. She told the officers that she

had been raped by two men in the adjoining room, and she started to describe them. One officer then saw appellant attempting to leave his room and arrested him in the hallway. Appellant was taken down to a squad car to "secure" him as the other officer stayed behind to watch the room. This officer saw the bed move, drew his service revolver and ordered appellant's brother to come out from under the bed. Appellant's brother stood up, was ordered out into the hallway, and was arrested. He was then taken to another car to "secure" him.

The officers proceeded to search the room. Several articles were found, including fabric from McB.'s skirt, her glasses, a pair of jockey shorts, and a towel. Semen stains were found on the skirt material and also on the men's underwear.

McB.'s pelvic exam showed seminal fluid which did not eliminate appellant or appellant's brother as donors. A BCA expert testified that certain hair found on the bed sheets was consistent with that of appellant's brother. Examination revealed that McB. was bruised on her chest, right hip, and right arm. Both wrists had noticeable marks consistent with being bound by some type of binding.

On the grounds of untimely disclosure of the witness, appellant was precluded from presenting evidence that a coworker of William Hatton had driven William and McB. to the Parkway Motel some time in November or December 1984 and the subject of their conversation was sexual relations. The defense's purpose for calling this witness was to impeach McB.'s testimony. She had previously testified that appellant and William were strangers to her.

The jury found appellant guilty on all three counts charged: first degree criminal sexual conduct, kidnapping of McB., and third degree assault of Garry.

## ISSUES

1. Did the trial court prejudicially err in admitting evidence seized from a warrantless search of appellant's motel room?

2. Did the trial court abuse its discretion in joining for trial the State's charges of criminal sexual conduct, assault and kidnapping?

3. Did the trial court abuse its discretion in admitting police identification photographs into evidence?

4. Did the trial court abuse its discretion in precluding a defense witness from testifying such that a new trial is necessary?

## ANALYSIS

### I.

Appellant asserts that the search of his motel room and the seizure of items from within violated his Fourth Amendment protection against illegal searches and seizures. We agree.

It is well established that a guest in a hotel room is entitled to the constitutional protection provided by the Fourth Amendment against unreasonable searches and seizures. *Stoner v. State of California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). It is also well established that a search conducted outside the judicial process, without a warrant, is unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971). Three exceptions to this general rule are recognized: (1) a search conducted incident to a lawful arrest, (2) a search conducted because of exigent circumstances, and (3) a search conducted with consent. *See Katz v. U.S.*, 389 U.S. 347, 357–58, 88 S.Ct. 507, 514–15, 19 L.Ed.2d 576 (1967). A warrantless search will be held unconstitutional unless it comes within one of these well-defined exceptions. *State v. Larson*, 346 N.W.2d 199, 200 (Minn.Ct.App.1984) (citing *Katz*, 389 U.S. at 357, 88 S.Ct. at 514). The search in the present case does not fall within any of these exceptions and therefore it was illegal.

The search by the police officers was not incident to the arrest of appellant, and does not fall within that exception to a

warrantless search. The rationale for allowing this type of limited search is to prevent a suspect from obtaining a weapon and endangering police officers, and also to prevent the destruction of evidence. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). Here, both suspects had been arrested, handcuffed, and "secured" by police officers. There was no danger of the suspects obtaining a weapon or destroying evidence in the motel room.

■ Nor were there any exigent circumstances which would justify the officers' warrantless search. The purpose of the exigent circumstances exception is to allow police officers to search when there is an urgent need and the delay of obtaining a warrant will prevent the discovery of evidence. *See Loftus v. State,* 357 N.W.2d 419, 421 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Mar. 6, 1985). Exigent circumstances may exist where there is a risk of removal or destruction of evidence, *State v. Mollberg,* 310 Minn. 376, 384, 246 N.W.2d 463, 469 (1976), and where the public or the arresting police officers are in danger. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967).

■ In the present case the suspects were already in custody and unable to destroy any evidence. Further, more police officers had been called and were available to guard the motel room door and prevent anyone from entering until a warrant was obtained. *See, e.g., Segura v. United States,* 468 U.S. 796, ——, 104 S.Ct. 3380, 3389–90, 82 L.Ed.2d 599 (1984).

The State urges that if the officers reasonably believed that there were other unrestrained suspects who could endanger the officers or the public, exigent circumstances would have existed. In this case, however, McB. told the officers that two men were involved. The officers had no reason to believe there were others.

■ The State also asserts that the search was valid because it was conducted with the implied consent of McB. This

argument, too, is meritless. The United States Supreme Court has held that consent may be given for a warrantless search by one who possesses "common authority over or other sufficient relationship to the premises" sought to be inspected. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Common authority depends upon a mutual use of the property by persons generally having joint access or control for most purposes, so that each has a right to permit an inspection. *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. Ordinarily, a mere guest of a premises may not give consent to search those premises when his or her interest is inferior to that of the host. *See United States v. Harris,* 534 F.2d 95 (7th Cir.1976). In this case, appellant was the registered guest of the motel and, as such, he was the "host." There is no evidence that McB. had any authority or relationship to the premises that would make her consent valid. Further, the State does not cite any law and we are not aware of any law justifying a warrantless search on an implied consent theory.

■ Finally, the State, recognizing that evidence obtained illegally by police is generally suppressed, argues that the evidence is admissible pursuant to an exception to the general rule which allows evidence to be admitted if its discovery would have been inevitable absent the illegal conduct by police officers. *Nix v. Williams,* 467 U.S. 431, 441, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The *Nix* Court held that if the prosecution can show that the information inevitably would have been discovered by "lawful means," the evidence should be received. 467 U.S. at 441, 104 S.Ct. at 2509.

This exception has been applied in cases where the police officers possessed lawful means of discovery and were, in fact, pursuing those lawful means prior to their illegal conduct. *See United States v. Apker,* 705 F.2d 293, 307 (8th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Durant,* 730 F.2d 1180 (8th Cir.), *cert. denied,*

—— U.S. ——, 105 S.Ct. 149, 83 L.Ed.2d 91 (1984).

The State contends that because the police officers could have obtained a search warrant, the questioned evidence would have inevitably been discovered. Such an application of the "inevitable discovery" rule would render the Fourth Amendment protection meaningless. A prosecutor would usually be able to show, through hindsight, that a warrant would have been issued and the evidence would have eventually been discovered. To require a valid search warrant prior to a search, with few exceptions, is a reasonable safeguard against police conduct that treads upon protected Fourth Amendment rights. If police are allowed to search when they possess no lawful means and are only required to show that lawful means could have been available even though not pursued, the narrow "inevitable discovery" exception would "swallow" the entire Fourth Amendment protection.

We find that the search of appellant's motel room and the seizure of evidence from within did not fall under any exception to the rule requiring a valid search warrant. It is unfortunate that otherwise exemplary police work at the scene of this crime was marred by seizure of physical evidence through methods clearly violative of the Fourth Amendment. The trial court should have suppressed the evidence obtained illegally from the search of appellant's motel room.

█ Although the trial court erred, such error does not necessarily require a new trial. *See State v. Olsen,* 282 N.W.2d 528, 532 (1979); *State v. Sorenson,* 270 Minn. 186, 200–01, 134 N.W.2d 115, 125 (1965). If a defendant's guilt can be conclusively proven without considering the evidence admitted erroneously, the trial court's error will be considered harmless. *State v. Fratzke,* 354 N.W.2d 402, 409 (Minn.1984). Although we are troubled by the admission of illegally seized evidence, we believe that the dominant evidence that conclusively proved appellant's guilt was the testimony of McB., corroborated by the

lab results from the vaginal swab. The same fluids found in McB. were also found on the fabric seized illegally from the motel room. The admission of the illegally seized objects in the motel room added little to the State's case, and was merely cumulative evidence. Therefore, we must conclude that the admission of this illegally seized evidence was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## II.

Appellant asserts that he was denied his right to a fair trial by the trial court's improper joinder of offenses, by the admission of mug shots where identity was not an issue, and by preclusion of the testimony of a defense witness.

### A. Joinder of Offenses

Over objection, the trial court granted the State's motion to consolidate the complaints for trial. Appellant asserts that the joinder of the assault charge as to Garry with the kidnapping and criminal sexual conduct charges as to McB. was improper and thus prejudicial error.

Minn.R.Crim.P. 17.03, subd. 4 permits a joinder of offenses for trial if the offenses "could have been joined in a single indictment, complaint or tab charge." If the offenses charged arose from the same course of conduct, then those offenses could have been properly joined in a single complaint and thus could be properly joined for trial. *See* Minn.R.Crim.P. 17.03, subd. 1; *State v. Conaway,* 319 N.W.2d 35, 42 (Minn.1982).

█ In determining whether offenses arise from a single course of conduct, the court focuses on the time and place of the alleged offenses and also considers whether the segments of the conduct involved were motivated by an effort to obtain a single criminal objective. *State v. Andersen,* 370 N.W.2d 653, 660 (Minn.Ct.App. 1985) (citing *State v. Knight,* 260 N.W.2d 186, 187 (Minn.1977)). This test involves an

examination of all the facts and circumstances of the case. *State v. Banks*, 331 N.W.2d 491, 493 (Minn.1983).

■ Appellant's assault on Garry and the offenses against McB. were motivated by an effort to obtain the same criminal objective. Garry was riding with appellant and his brother. Garry testified that he became worried about the actions of those two. In fact Garry left the car at his first opportunity and testified that he opened the door for McB. He then walked with her away from the car. Appellant then assaulted Garry, searched for McB. and subsequently abducted and sexually assaulted her. Had the charge involving the offense against Garry been tried separately from those involving the offenses against McB., it is almost certain that the testimony of each victim would have been admissible in each trial. The jury here heard nothing that would have been inadmissible in either of two separate trials. The trial court did not err by its joinder of the offenses against the two victims.

## B. Admission of Mug Shots

Appellant next asserts that the trial court prejudicially erred in admitting photographs of appellant that were taken for a photo line-up.

■ A trial court, in determining whether to admit police identification photographs, must decide whether their probative value is substantially outweighed by the potential of the photographs for unfair prejudice. *State v. McAdoo*, 330 N.W.2d 104, 107 (Minn.1983) (citing Minn.R.Evid. 403).

■ Appellant asserts that the main reason for excluding police identification photographs is that jurors might infer from them that the defendant has been involved in prior criminal conduct. If the photographs of appellant were in fact taken in connection with a prior arrest, the jury was not told this. The jury had no way of determining if the pictures were taken before appellant's arrest in the present case. The admission of the mug shots into evidence was a proper exercise of the trial court's discretion.

## C. Preclusion of Defense Witness

Appellant finally asserts that the trial court's refusal to allow a defense witness to testify because appellant had not complied with discovery rules was error and denied appellant his right to a fair trial.

The relevant disclosure requirements are as follows:

> The defendant shall supply the prosecuting attorney with the names and addresses of persons whom the defendant intends to call as witnesses at the trial together with their record of convictions, if any, within his actual knowledge.

Minn.R.Crim.P. 9.02, subd. 1(3)(a).

> If subsequent to compliance with any discovery rule or order, a party discovers additional material, information or witnesses subject to disclosure, he shall *promptly notify* the other party of the existence of the additional material or information and the identity of the witnesses.

Minn.R.Crim.P. 9.03, subd. 2(a) (emphasis added).

■ The imposition of sanctions for violations of discovery rules is a matter particularly suited to the judgment and discretion of the trial court. *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn.1979). Absent a clear abuse of that discretion, we will not overturn the trial court's ruling. *Id.* However, the preclusion of a defense witness's testimony is a severe sanction and should not be lightly invoked. *See id.* at 374.

Appellant's lawyer learned of the possibility of an additional witness one week before trial, but he did not know his identity. The lawyer stated that, after meeting the witness in the hall of the court building during appellant's trial (and one day before he attempted to have this witness testify), he learned the witness's name and informed the State and the trial court of his identity.

The record does not reflect whether defense counsel informed the prosecutor and

the trial court of the existence of a possible (although unnamed) witness when he was first aware of the witness a week earlier. Nonetheless, the sanction imposed upon appellant was extremely harsh. *See State v. Carlson,* 328 N.W.2d 690, 695 (Minn.1982).

While we recognize that the State might have difficulty in conducting a thorough cross-examination of a surprise witness, any prejudice to the State could have been rectified by a short continuance. *See Lindsey,* 284 N.W.2d at 373. This preferred course of procedural conduct would have given the State an opportunity to investigate the witness and prepare for meaningful cross-examination of him.

 We are troubled by the trial court's failure to grant a continuance and believe that failure to do so was an abuse of discretion. However, in determining whether appellant was prejudicially harmed by preclusion of this witness, we must examine the nature of his proposed testimony. We believe that the sole beneficial function of the witness's testimony was that it could have impeached the credibility of McB. This witness could not have impeached the incriminating physical evidence nor the testimony of the maid describing McB.'s frantic and disheveled condition following the incident. Testimony from the precluded witness could have only served to show that McB. may have known appellant's brother, not appellant himself. Because the evidence presented by the State at trial was so overwhelmingly demonstrative of appellant's guilt, we cannot conclude that the jury's failure to hear that McB. may have known appellant's brother was so prejudicial as to require a new trial.

## DECISION

The admission of illegally seized evidence was harmless beyond a reasonable doubt. The trial court did not abuse its discretion in joining the charged offenses for trial nor in admitting police identification photographs into evidence. The trial court's preclusion of a defense witness's testimony, although an abuse of discretion, did not substantially prejudice appellant so as to require a new trial.

Affirmed.