*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1545**

State of Minnesota,
Respondent,

vs.

Thomas James Mitchell,
Appellant.

**Filed September 28, 2015
Affirmed
Larkin, Judge**

Stearns County District Court
File No. 73-CR-13-1419

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Chutich, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

A jury found appellant guilty of terroristic threats, possession of a firearm by an ineligible person, and two controlled-substance crimes. Appellant challenges his convictions, arguing that: (1) a search warrant for his home was not supported by probable cause and the search exceeded the scope of the warrant, (2) the district court violated his right to present a complete defense by precluding him from arguing that the state misled him to believe that his right to possess a firearm had been restored, (3) the district court abused its discretion by admitting an out-of-court statement from the victim as a prior consistent statement, and (4) the district court plainly erred by failing to instruct the jury that it must unanimously decide which of the appellant's acts constituted a terroristic threat. We affirm.

**FACTS**

In February 2013, St. Cloud police officers responded to a dispute at the home of appellant Thomas James Mitchell, which involved T.Y. According to T.Y., she and Mitchell had been arguing when Mitchell took a crossbow off the wall, attempted to load it, and pointed it at her. T.Y. stated that Mitchell dragged her by her hair, pushed her to the ground, and held her head down in a manner that prevented her from breathing. When T.Y. attempted to fight back, Mitchell threatened to break her neck and to kill her. The officers arrested Mitchell for domestic assault and transported him to jail.

That evening, the police obtained a warrant to search Mitchell's home for:

- Items showing residency and/or occupancy.

- Any and all crossbows.
- Documents including but not limited to receipts, operator manuals, and/or warranty information regarding the purchase and/or possession of crossbow and/or crossbow accessories.
- Any and all crossbow arrows/ammunition.

During the ensuing search, officers seized the crossbow. They also observed drugs and drug paraphernalia. Based on that observation, the police obtained a second search warrant to search the home for drugs and drug paraphernalia. Officers executed the second search warrant and seized a pellet gun, suspected methamphetamine and marijuana, a drug pipe, and miscellaneous firearm ammunition. During a subsequent police interview, T.Y. described a "hidden room" in Mitchell's residence. Officers obtained and executed a third search warrant based on that information. They seized equipment related to a controlled-substance grow operation.

The state charged Mitchell with domestic assault by strangulation, terroristic threats, second-degree possession of a controlled substance, fifth-degree possession of a controlled substance, and possession of a firearm (the pellet gun) by an ineligible person. The firearm-possession charge was predicated on Mitchell's 1992 conviction of a first-degree controlled-substance crime.

Mitchell moved to suppress all of the evidence obtained during the searches of his home, arguing that the search warrants were not supported by probable cause and that the officers' searches exceeded the scope of the warrants. The district court denied Mitchell's motion.

On the morning of trial, the district court addressed a defense motion to dismiss the firearm-possession charge on the basis that the probation order from his disqualifying

offense misled him to believe that his right to possess firearms had been restored. The district court denied the motion and did not allow Mitchell to present a defense based on the probation order, but the district court received a copy of the probation order as a court exhibit.

At trial, the state offered an audio recording and transcript of a police interview of T.Y., which includes the following exchange:

> Q. Okay alright um does [Mitchell] have access to a gun?
> A. Yes.
> Q. Is that in the residence?
> A. Um there used to be one there[.] I'm not sure if there still is now. He . . . owns three houses.
> . . . .
> Q. Okay do you know what kind of gun it is?
> A. No I don't. . . . I know he has a handgun and a rifle . . . . The handgun I used to use but I think I wanna say . . . it looks like a—well there's like three different sizes. I don't know guns really well but like . . . an older gun.

Mitchell objected to T.Y.'s interview as hearsay. The district court ruled that the interview was admissible as a prior consistent statement, and the audio recording was played for the jurors. Mitchell later moved for a mistrial based on the admission of T.Y.'s statement, arguing that the statement was inadmissible. The district court denied the motion. Mitchell turned down the district court's offer to strike the contested portion of T.Y.'s statement and to provide a curative instruction. But at Mitchell's request, the district court added a final jury instruction that Mitchell was "not being tried for and may not be convicted of any behavior other than the charged offenses" and that the jury was "not to convict [him] on the basis of conduct on another occasion."

4

The jury found Mitchell not guilty of domestic assault by strangulation but guilty of terroristic threats, second-degree possession of a controlled substance, fifth-degree possession of a controlled substance, and possession of a firearm by an ineligible person. Mitchell moved for a judgment of acquittal on the firearm-possession offense, arguing that the district court violated his right to due process by preventing him from introducing evidence regarding his disqualifying conviction. Mitchell also moved for a new trial, reiterating his challenges to the searches of his house. The district court denied Mitchell's motions and sentenced him to serve 67 months in prison.

Mitchell appeals.

## D E C I S I O N

### I.

Mitchell challenges the validity and execution of the first search warrant, adding that because the first search was invalid, the district court should have suppressed the evidence obtained during the second and third searches. *See State v. Olson*, 634 N.W.2d 224, 229 (Minn. App. 2001) ("[E]vidence discovered by exploiting previous illegal [police] conduct is inadmissible."), *review denied* (Minn. Dec. 11, 2001).

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999).

"When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Instead, we "afford the district court's determination great deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). This court limits its "review to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed." *McGrath*, 706 N.W.2d at 539. In doing so, we examine the totality of the circumstances. *State v. Holiday*, 749 N.W.2d 833, 839 (Minn. App. 2008).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

"[C]ourts must be careful not to review each component of the affidavit in isolation." *Id.* "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004). "Furthermore, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted).

The first search warrant authorized the police to search Mitchell's house for "[i]tems showing residency and/or occupancy" and "[d]ocuments, including but not

limited to receipts, operator manuals, and/or warranty information regarding the purchase and/or possession of crossbow and/or crossbow accessories." Mitchell argues that the supporting affidavit "does not state any reason or rationale" in support of its request to search for those items and that there is no nexus between the crimes that were being investigated and the documents. Essentially, Mitchell argues that the documents at issue were not contraband or evidence of crime and there was not probable cause to search for those items.[1] We disagree.

One element of domestic assault by strangulation is that the defendant and the victim were family or household members. Minn. Stat. § 609.2247, subd. 2 (2012). "Family or household members" include "persons who are presently residing together or who have resided together in the past." Minn. Stat. § 518B.01, subd. 2(b)(4) (2012). Items showing Mitchell's residency or occupancy could show that Mitchell and T.Y. were residing or had resided together and therefore constitute evidence of a crime. Moreover, documents establishing Mitchell's ownership of the crossbow and ammunition could corroborate T.Y.'s statements that Mitchell used the crossbow during the domestic-assault and terroristic-threats offenses. The crossbow documents therefore could also be evidence of a crime. The issuing judge did not err by concluding that there was probable

---

[1] Mitchell addresses the "nexus" between the crimes being investigated and the evidence sought. However, "nexus" in the search-warrant context typically refers to the connection between the evidence sought and the place to be searched. *See, e.g.*, *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014) ("A sufficient 'nexus' must be established between the evidence sought and the place to be searched."). Mitchell does not argue that the evidence listed in the search warrant was unlikely to be found in his home.

cause to search Mitchell's home for the residency or occupancy items and crossbow documents.

Mitchell also contends that the officers' first search exceeded the scope of the warrant. Mitchell argues that the officers unreasonably "expand[ed] the scope of the search for documents showing ownership of the crossbow or occupancy to [a] child's bedroom" and that "it was not reasonable to believe these items might also be found in a child's room." Mitchell further argues that "[b]ecause the expansion of the search to the child's room was not reasonable, the controlled substances and money found in the child's room, which formed the basis for issuance of the second search warrant, should have [been] suppressed."

"A search pursuant to a warrant may not exceed the scope of that warrant." *State v. Soua Thao Yang*, 352 N.W.2d 127, 129 (Minn. App. 1984). "The test for determining whether a search has exceeded the scope of the warrant is one of reasonableness." *Id.* To determine whether the conduct of an officer executing a search warrant was reasonable, appellate courts consider the totality of the circumstances. *State v. Thisius*, 281 N.W.2d 645, 645-46 (Minn. 1978). "[A] search is limited in scope to those areas where one would reasonably expect to find the items identified in the search warrant." *State v. Mollberg*, 310 Minn. 376, 383, 246 N.W.2d 463, 468 (1976). And "any container situated within a residence that is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *State v. Wills*, 524 N.W.2d 507, 509 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995). We review de novo the issue of whether a search exceeded the

8

scope of the warrant. *See id.* at 509-12 (reviewing de novo the issue of whether a search exceeded the scope of a warrant).

As determined above, the officers had a valid warrant to search for documents regarding occupancy, residency, or ownership of the crossbow and ammunition. They therefore were authorized to search all areas inside Mitchell's house where one would reasonably expect to find those documents, including any containers that could conceal the documents. *See Mollberg*, 310 Minn. at 383, 246 N.W.2d at 468; *Wills*, 524 N.W.2d at 509. Mitchell takes issue with the officers' search of a cabinet in a child's bedroom. Although it may be a close case, an investigating police officer charged by warrant to search anywhere specified documents might reasonably be found would search for them in a home's cabinets. And because organizational practices vary in wide extremes from home to home, the officer has no constitutional obligation to exclude a cabinet simply because it is located in a child's room. The officers in this case therefore did not exceed the scope of the first search warrant by searching in the child's bedroom.

In sum, the issuing judge had a substantial basis to conclude that there was probable cause for the first search warrant, and the officers did not exceed the scope of the warrant during its execution. Because the first search was constitutional, we do not consider Mitchell's argument that items seized during the second and third searches must be suppressed as the tainted result of the first search.

**II.**

Mitchell contends that the district court denied him a meaningful opportunity to present a complete defense to the charge of possession of a firearm by an ineligible

9

person. Under the Due Process Clauses of the United States and Minnesota Constitutions, a criminal defendant is "afforded a meaningful opportunity to present a complete defense." *State v. Quick*, 659 N.W.2d 701, 712 (Minn. 2003) (quotations omitted). But "a defendant has *no* right to introduce evidence that either is irrelevant, or whose prejudicial effect outweighs its probative value." *State v. Crims*, 540 N.W.2d 860, 866 (Minn. App. 1995), *review denied* (Minn. Jan. 23, 1996). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Irrelevant evidence is inadmissible. Minn. R. Evid. 402.

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). Even when it is claimed that the exclusion of evidence deprived a criminal defendant of his or her constitutional right to present a complete defense, we review the ruling under the abuse-of-discretion standard. *State v. Penkaty*, 708 N.W.2d 185, 201 (Minn. 2006).

The firearm-possession charge was predicated on Mitchell's 1992 conviction of a first-degree controlled-substance crime. The probation order from that case states: "Any person convicted of a felony loses his civil rights, including the right to vote in this state and the right to hold public office until the stay of sentence expires." Mitchell offered the probation order as evidence that the state misled him to believe he could possess a

10

firearm. Mitchell argues that the probation order was relevant because it would allow the jury to "evaluate the reasonableness of [his] reliance on the order."

"Due process prohibits state representatives from misleading individuals as to their legal obligations." *Whitten v. State*, 690 N.W.2d 561, 565 (Minn. App. 2005). "A person has the right to rely on the promises of a government representative and may follow the advice or instructions of the representative, even if the advice is a misstatement of the law." *Id.* at 566. Accordingly, "[t]he state cannot indicate that a person has the right to possess firearms when all his civil rights are reinstated, tell him all his civil rights are reinstated, and then tell him that he should have known he could not possess a firearm." *Id.*

Mitchell relies solely on the probation order from his 1992 conviction to argue that the state misled him. But the order does not indicate that Mitchell's rights had been restored or that Mitchell could possess firearms; it merely states that his civil rights were lost "until the stay of sentence expires." In *Whitten*, this court reversed a defendant's conviction of unlawful possession of a firearm because the district court had given him a discharge order stating that his civil rights were restored and did not check a box indicating that the defendant could not possess a firearm for another ten years. *Id.* at 565-66. Unlike the discharge order in *Whitten*, the probation order here does not indicate that Mitchell's civil rights had been restored or that he could lawfully possess a firearm. Because the probation order does not tend to establish that the state misled Mitchell regarding his ability to lawfully possess firearms, it was not relevant to his defense theory and the district court did not err by excluding it from evidence. *See* Minn. R. Evid. 401.

11

Nor did the district court violate Mitchell's constitutional right to present a complete defense.

**III.**

Mitchell contends that the district court erred by admitting T.Y.'s statement to police that he had access to a gun, specifically, "a handgun and a rifle." Mitchell argues that the statement was inadmissible hearsay. We review the district court's evidentiary ruling for an abuse of discretion. *See Amos*, 658 N.W.2d at 203.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is generally inadmissible. Minn. R. Evid. 802. A statement is not hearsay if (1) "the declarant testifies at the trial . . . and is subject to cross-examination concerning the statement" and (2) "the statement is . . . consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness." Minn. R. Evid. 801(d)(1), (d)(1)(B). The district court ruled that T.Y.'s statement was admissible as a prior consistent statement.

Before admitting evidence of a prior consistent statement, the district court must determine whether the prior statement is in fact consistent with trial testimony. *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000). "[W]hen a witness' prior statement contains assertions about events that have not been described by the witness in trial testimony, those assertions are not helpful in supporting the credibility of the witness and are not admissible under this rule." Minn. R. Evid. 801 1989 comm. cmt.

12

Mitchell argues that T.Y.'s out-of-court statement was not consistent with her trial testimony because T.Y. never testified that Mitchell owned or had access to firearms. The state argues that Mitchell failed to properly object to T.Y.'s statement and that this court therefore should review for plain error. For the purpose of our analysis, we assume that Mitchell properly objected to the statement and that the statement was inadmissible hearsay. The evidentiary ruling therefore warrants reversal only if Mitchell can establish prejudice. *See Bakken*, 604 N.W.2d at 110 ("[E]ven if a trial court errs in an evidentiary ruling, we will not reverse unless the error substantially influenced the jury to convict.").

Mitchell contends that there is a reasonable probability that T.Y.'s statement regarding his possession of guns significantly affected the verdict. Mitchell argues that "a reasonable jury may have relied upon [T.Y.'s] statement that Mitchell has multiple firearms to find him guilty of ineligible possession of a firearm." But the firearm-possession charge was based on the pellet gun that the police found in Mitchell's home during the second search, and not on the handgun or rifle that T.Y. referred to in her statement. Accordingly, the prosecutor did not refer to T.Y.'s statement regarding Mitchell's guns, a handgun, or a rifle in her closing argument. Mitchell's defense attorney, on the other hand, mentioned those subjects, telling the jury, "[Mitchell] is not on trial for possession of any handgun or any rifle. He's on trial for possession of that BB gun." And, as Mitchell points out, "[t]here was no other evidence to corroborate [T.Y.'s statement]." Moreover, the district court instructed the jury, at Mitchell's request, that it was not to find Mitchell guilty based on any actions other than those described in the complaint. We assume that the jurors followed that instruction. *See State v. Taylor*,

650 N.W.2d 190, 207 (Minn. 2002) (stating that appellate courts "presume the jury followed the [district] court's instructions").

In sum, Mitchell fails to demonstrate that admission of T.Y.'s statement was prejudicial. The district court's ruling therefore does not provide a basis to reverse.

**IV.**

Mitchell contends that the district court plainly erred by failing to provide a "specific unanimity instruction" regarding his terroristic-threats charge. Mitchell did not object to the alleged error at trial.

"A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal" any error in the instructions. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). Nonetheless, "a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Id.*; *see also State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001). We therefore review for plain error. *See* Minn. R. Crim. P. 31.02.

Under the plain-error test, this court will not grant relief unless (1) there is an error, (2) the error is plain, and (3) the error affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error is "plain" if it is clear or obvious under current law, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted), and an error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct," *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). If the first three requirements of the plain-error test are satisfied, this court then considers whether

14

the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

Minnesota requires unanimous jury verdicts in all criminal cases. Minn. R. Crim. P. 26.01, subd. 1(5); *State v. Hart*, 477 N.W.2d 732, 739 (Minn. App. 1991), *review denied* (Minn. Jan. 16, 1992). Jurors must unanimously agree regarding which alleged acts the defendant committed if each act itself constitutes an element of the charged crime. *State v. Rucker*, 752 N.W.2d 538, 548 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008); *State v. Stempf*, 627 N.W.2d 352, 355 (Minn. App. 2001). "Where jury instructions allow for possible significant disagreement among jurors as to what acts the defendant committed, the instructions violate the defendant's right to a unanimous verdict." *Stempf*, 627 N.W.2d at 354.

"But the jury does not have to unanimously agree on the facts underlying an element of a crime in all cases," *State v. Pendleton*, 725 N.W.2d 717, 731 (Minn. 2007), and "unanimity is not required with respect to the alternative means or ways in which the crime can be committed," *State v. Begbie*, 415 N.W.2d 103, 106 (Minn. App. 1987) (quotation omitted), *review denied* (Minn. Jan. 20, 1988). Thus, "the jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt." *State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002).

Minnesota courts have "recognized the distinction between the basic elements of the crime and the facts underlying those basic elements." *State v. Hager*, 727 N.W.2d

668, 674 (Minn. App. 2007) (citing *Pendleton*, 725 N.W.2d at 731). "The *Pendleton* analysis limits the unanimous verdict requirement to situations where the offenses of the accused are inherently separate and juror confusion or disagreement would deny the accused due process." *Id.* "The cases across the country . . . recognize and note that it is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime." *Begbie*, 415 N.W.2d at 106 (quotation omitted).

In her closing argument, the prosecutor stated that Mitchell made "a series of threats that all fit" the elements of the state's single terroristic-threats charge. The prosecutor highlighted three allegations: (1) that Mitchell loaded the crossbow and pointed it at T.Y., (2) that Mitchell stated that he would break T.Y.'s neck if she tried to fight back, and (3) that Mitchell stated to T.Y. while he made the 911 call: "When I get out, do you know what's going to happen to you and your family?" Mitchell argues that the district court erred by not giving a specific unanimity instruction for his terroristic-threats charge because "the state presented three different factual scenarios as possible bases for the conviction."

Although Mitchell argues that the district court erred, he does not explain how that error was clear or obvious under current law. In fact, the only case Mitchell cites in support of his argument is *Stempf*, and that case is readily distinguishable.[2]

---

[2] Mitchell also relies on *State v. Wenthe*, in which this court concluded that the district court violated the defendant's right to a unanimous verdict by failing to give a specific-

In *Stempf,* "the state charged [the defendant] with only one count of [controlled-substance] possession but alleged two distinct acts to support a conviction: (1) that he possessed methamphetamine . . . at . . . his workplace; and (2) that he possessed methamphetamine found in the truck in which he was riding when he arrived at work." 627 N.W.2d at 357. The district court denied the defendant's request for a specific-unanimity instruction requiring the jury to agree regarding which of the two acts he committed. *Id.* at 357-58. In closing argument, "the state told the jury it could convict if some jurors believed [the defendant] possessed the methamphetamine found [at the workplace] while others believed he possessed the methamphetamine found in the truck." *Id.* at 358. On appeal, this court concluded that the district court violated the defendant's right to a unanimous verdict by refusing to give a specific-unanimity instruction. *Id.* We noted that "[t]he two acts of possession did not constitute a single act," the defendant "presented different defenses for each alleged act of possession," and "[t]he acts occurred in different places and at different times." *Id.*

The reasons for finding error in *Stempf* do not apply here. Mitchell's threats amount to a single act: they occurred in the same place at the same time, in succession, during an escalating fight between Mitchell and T.Y., which began in an upstairs

---

unanimity instruction. 845 N.W.2d 222, 228-31 (Minn. App. 2014). However, the supreme court recently reversed *Wenthe*, concluding that it was not reasonably likely that the lack of a specific-unanimity instruction affected the defendant's substantial rights. *State v. Wenthe*, 865 N.W.2d 293, 301 (Minn. 2015). In doing so, the supreme court did not decide whether the district court erred by omitting a specific-unanimity instruction. *Id.* at 299.

bedroom, moved downstairs, and ended with T.Y. outside the front door and Mitchell yelling from inside.

Contrary to Mitchell's argument, *Stempf* does not support the conclusion that a specific-unanimity instruction was required in this case. This appears to be a case in which the jury merely could have disagreed regarding the alternative ways in which the crime of terroristic threats was committed. *See Begbie*, 415 N.W.2d at 106 ("It is sufficient that all jurors unanimously agreed on their ultimate conclusion that [the defendant] was guilty of [terroristic threats], even though they may not have agreed upon exactly which victim [he] had intended to terrorize."). Thus, Mitchell has not demonstrated that the district court plainly erred by failing to *sua sponte* provide the jury with a specific-unanimity instruction. He therefore is not entitled to relief under the plain-error standard.

**Affirmed.**