### No. 79SA184

**The People of the State of Colorado v. Ruben Joe Muniz**

(597 P.2d 580)

Decided July 16, 1979.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Terri L. Brake, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The district attorney prosecuted this interlocutory appeal from an adverse ruling of the district court on a motion to suppress evidence seized in a search of a shed at defendant's residence. The sole issue before us is whether the affidavit and search warrant described the place to be searched with sufficient specificity to meet Fourth Amendment standards. The district judge suppressed the sawed-off shotgun which was seized when the warrant was executed. We reverse.

## I.

The defendant, Ruben Joe Muniz was arrested and charged with aggravated robbery, section 18-4-302, C.R.S. 1973 (1978 Repl. Vol. 8). Investigation of the charges by Detective Daril Cinquanta of the Denver Police Department developed facts which were set forth in an affidavit which was presented to the County Court in support of a request for a warrant to search "the premises known as 1401 W. Ada Place," in Denver, Colorado. The warrant was issued and certain evidence seized in the execution of the warrant created the Fourth Amendment issue which is before us in this case.

The affidavit prepared by Detective Cinquanta stated that he obtained information from an informant who had seen a sawed-off shotgun in the bedroom of defendant's home at 1401 W. Ada Place. Cinquanta also stated in the affidavit that he had received information that the defendant had used such a weapon in an aggravated robbery. In addition, Cinquanta requested permission to search for numerous other items apparently connected with the robbery. It is conceded that the affidavit form established probable cause for the issuance of a search warrant.

In the affidavit form submitted by Cinquanta, the assertion was made that the property in question was located "on the premises" of 1401 W. Ada Place.

In addition, Cinquanta stated in his affidavit that:
"Based on the aforementioned information contained in this affidavit for search warrant, your affiant feels there is probable cause to believe that at 1401 W. Ada Place . . . the home of Ruben Muniz there is a sawed off 12 gauge shotgun . . . and that other items of evidence listed in the search warrant are also on the premises."

The search warrant issued by the County Court was also on a printed form. That form also contained printed form language which stated that:
"I am satisfied that there is probable cause to believe that the property so described is located on the (person) (premises) above described. YOU

ARE THEREFORE COMMANDED to search forthwith the place or person described above . . . ."

In the warrant issued by the county court, the word "person" was crossed out.

Pursuant to this warrant, Cinquanta commenced a search of 1401 W. Ada Place. He first searched the house and he found most of the items listed in the search warrant,[1] but did not locate the shotgun within the house. Cinquanta then searched a small storage shed in the backyard of the house, and found the shotgun and two shotgun shells wrapped in a shirt.

The shed was an unattached structure approximately 30 feet from the house. The backyard was encircled by a fence, and the shed was within the fence. The shed was enclosed, except for the front, and an unattached piece of plywood rested against the front. Nothing in the affidavit submitted to the county court indicated that such a shed was located at 1401 W. Ada Place, or that Cinquanta believed the shotgun was located in the shed.

The district court suppressed the shotgun as evidence, because the word "premises" did not appear in the affidavit, and Cinquanta had only stated that the shotgun would be found in defendant's "house." The suppression order was predicated on the theory that the affidavit could not support a warrant which authorized a search beyond the house itself.

The district court was in error. First, as noted above, the affidavit twice used the word "premises" in describing the place to be searched. Second, the district court's ruling constitutes a hypertechnical construction of a search warrant and the accompanying affidavit which has been condemned by the United States Supreme Court.

"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

---

[1] The validity of the seizure of those items is not challenged on appeal.

## II.

However, we must still address defendant's contention that the word "premises," when used in an affidavit or search warrant either as part of a printed form, or in a context indicating that the word was intended only to apply to a house, does not "particularly describe the place to be searched," as required by the Fourth Amendment. Because of this alleged lack of precision, defendant argues, the warrant issued by the county court could not support Cinquanta's search of the shed.

"[T]he primary purpose of this limitation is to minimize the risk that officers executing search warrants will by mistake search a place other than a place intended by the magistrate." Lefave, *Search and Seizure*, §4.5 (West, 1978).

The district attorney asks us to adopt a general rule that the use of the word "premises" in a search warrant will in all instances authorize a search of all the land encompassed in the description of the property contained in the warrant. *See, United States v. Meyer*, 417 F.2d 1020 (8th Cir. 1969). We decline to do so. The word "premises" does not have a particular meaning beyond that dictated by the circumstances in which it is used. "Premises" can refer to a single room, *see, Black's Law Dictionary* 1344 (rev. 4th ed. 1968), a large tract of farmland, *see, United States v. Meyer, supra,* or an apartment building or other multiple use building which could not be searched without specificity in both the affidavit and warrant. *See, People v. Alarid,* 174 Colo. 289, 483 P.2d 1331 (1971); *People v. Avery,* 173 Colo. 315, 478 P.2d 310 (1970).

The word "premises" was not used in the affidavit and search warrant in this case to describe with particularity the place to be searched. However, the requirements of specificity contained in the Fourth Amendment of the United States Constitution, and Art. II, Sec. 7 of the Colorado Constitution are often taxed by the use of printed forms. Every affidavit and warrant, including those on printed forms, should be carefully prepared to fit the requirements of the particular case. Writs of assistance provided the background for the Fourth Amendment, and general warrants are as objectionable today as they were when the Federal Constitution was drafted. *Lo-Ji Sales v. New York,* _____ U.S. _____, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). The scope of a search warrant should be determined by a neutral and detached magistrate. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971).

Nevertheless, we have concluded that the search and seizure carried out in this case were reasonable and met Fourth Amendment requirements. The following factors are relevant to our decision. First, the sawed-off shotgun which was seized was portable contraband, of a type which the defendant would have reason to secrete, and which could be easily hidden. Detective Cinquanta first searched that place where the shotgun had been seen, and thus attempted to limit the intensity of the search. *Purcell v.*

*State,* 325 So. 2d 83 (Fla. App. 1976); *State v. Mollberg,* 310 Minn. 376, 246 N.W. 2d 463 (1976). In the search, Cinquanta found other items in the house which he was authorized to seize. Only then did he search the shed. The shed was close to the house, in an enclosed area in which the defendant had a possessory right, and to which he had ready, expectable and permitted access. *See, People v. Weisenberger,* 183 Colo. 353, 516 P.2d 1128 (1973). Finally, once Cinquanta found the shotgun he ended his search. *State v, Starke,* 81 Wis. 2d 399, 260 N.W. 2d 739 (1978); *United States v. Highfill,* 334 F. Supp. 700 (E.D. Ark. 1971).

In such circumstances, we cannot say that Cinquanta's conduct was unreasonable, or that he exceeded the reasonable scope of the warrant under which he acted.

Accordingly, the ruling of the district court is reversed.