The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Scott C. EIRISH, Defendant–Appellant.

No. 03CA2225.

Colorado Court of Appeals, Div. III.

Feb. 8, 2007.

Rehearing Denied April 19, 2007.

Certiorari Denied Aug. 27, 2007.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROMÁN.

Defendant, Scott C. Eirish, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession with intent to distribute a schedule II controlled substance, methamphetamine. We remand for further proceedings.

According to the affidavit submitted in support of a search warrant, police officers used a confidential informant to set up a drug buy between an undercover officer and a methamphetamine broker. During the attempted transaction, the broker said that he needed to go to Golden Gate Canyon to obtain the drugs from his source and would return with the requested methamphetamine within an hour.

Police officers then followed the broker to a rural property in the canyon and watched him open the gate and drive onto the property "up a steep road to a recreational vehicle parked high above a home on a ridge." One of the officers conducting the surveillance watched the broker back down the road,

followed by a pickup truck. The truck drove down to the property's main home while the broker "drove to a large tin garage located 50–60 yards north of the main home." The broker walked into the garage. After about thirty minutes, the broker exited the garage and returned to his vehicle. Surveillance units followed the broker back to where the undercover officer was waiting to purchase the drugs. The broker explained that his source only had one gram of methamphetamine but that the source would have two ounces in two more hours. The broker then sold the drugs he had to the undercover officer.

Based on the affidavit, a magistrate issued a search warrant for the "premises." The police executed a simultaneous search of the garage and the home. The police found equipment and chemicals used to make methamphetamine in the garage. They also found drugs, a methamphetamine recipe, and other paraphernalia in the home. Defendant, who lives in the home, admitted to owning the drugs found inside the home.

Prior to trial, defendant filed a motion to suppress evidence obtained as a result of an allegedly unlawful search and statements he made at the time of his arrest. The trial court conducted an evidentiary hearing and denied defendant's motion.

## I. Sufficiency of Factual Allegations

Defendant first contends that the factual allegations contained in the affidavit in support of the search warrant were insufficient to establish probable cause to search the premises, particularly the home. We agree in part and remand for further proceedings.

■ Both the United States and Colorado Constitutions prohibit the issuance of a search warrant except upon a showing of probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized. U.S. Const. amend. IV; Colo. Const. art. II, § 7. The purpose of this particularity requirement is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

■ Probable cause must be established within the four corners of the affidavit in support of a search warrant. The affidavit establishes probable cause if it contains sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Pacheco,* —— P.3d ——, 2006 WL 2864645 (Colo. No. 06SA132, Oct. 10, 2006).

■ In determining whether probable cause exists, we must look at the totality of the circumstances and make a practical, commonsense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime. *People v. Pacheco, supra.*

■ We give great deference to a magistrate's probable cause determination. We must decide whether an affidavit provided a substantial basis for the issuing magistrate to conclude that probable cause existed for a valid search warrant and not whether we would have found probable cause in the first instance. *People v. Hebert,* 46 P.3d 473 (Colo.2002).

■ Doubts must be resolved in favor of a magistrate's determination of probable cause because such deference supports the preference for police to seek a judicial determination of probable cause, rather than resorting to warrantless searches in the hope of relying on consent or another exception to the warrant requirement that might develop at the time of the search. *People v. Hebert, supra.*

■ Probable cause must be established with respect to each place to be searched. *People v. Randolph,* 4 P.3d 477 (Colo.2000); *People v. Bachofer,* 85 P.3d 615 (Colo.App. 2003). Vague allegations in the affidavit will not suffice. A connection must be shown between the crime suspected and the area to be searched. *People v. Kazmierski,* 25 P.3d 1207 (Colo.2001). Where the affidavit describes a variety of locations without specifying the crime being perpetrated at each, the

geographic scope of the affidavit comes under close scrutiny. *People v. Randolph, supra.*

■ Use of the word "premises" in a search warrant will not in all instances authorize a search of all land encompassed in the description of property contained in the warrant. The word "premises" does not have a particular meaning beyond that dictated by the circumstances in which it is used. Therefore, it can refer to a single room, a large tract of farmland, an apartment building, or another multiple use building which could not be searched without specificity in both affidavit and warrant. *People v. Muniz,* 198 Colo. 194, 597 P.2d 580 (1979).

Here, the affidavit stated that the broker agreed to provide a sample of methamphetamine to the undercover officer, but "his source lived in the 'mountains,'" and the broker "needed to go to the area of the Golden Gate Canyon in Golden to obtain the drugs." After saying that he would return in about one hour, the broker "drove directly to a large property in the canyon."

[The broker] opened the cattle gate at the entrance to the property and drove to the right, driving up a steep road to a recreational vehicle parked high above a home on a ridge. Detective [V] observed [the broker] back down the steep road. He was followed by a newer model Ford pickup truck which was near the site where the RV was located. The Ford truck drove back down to the property's main house while [the broker] drove to a large tin garage located 50–60 yards north of the main home. After 30 minutes [the broker and his girlfriend] exited the large tin shed and returned to their vehicle. Surveillance units followed [the broker] back to [the undercover officer's] location where the transaction was completed.

The affidavit further states:

Based on [the affiant's] training, experience and participation in other drug investigations, [he is] aware that it is common for drug dealers to maintain books, records, notes, ledgers, money orders and other papers relating to the transportation, ordering, storage, sale, and distribution of controlled substances and other items relating to drug dealing, in locations used as storage facilities. These records include bank records, other documents of financial transactions, telephone records, computer records and telephone directories.

The magistrate issued a search warrant for the described "premises," including "any/all closed containers and the person of any occupants of the residence and all vehicles situated on the property."

## A. Garage

Defendant first argues that the affidavit does not support a finding of probable cause to search the garage. Specifically, he asserts that no nexus exists tying him to the broker as the drug source because (1) the broker did not identify defendant as such; (2) the police did not observe the broker contact defendant or anyone else on the property; (3) the police did not observe any behavior indicating drugs were on the property; and (4) the police had no evidence or knowledge indicating that defendant engaged in drug activity. We disagree.

The Colorado Supreme Court has held that during a controlled drug transaction, probable cause exists to search the location to which the seller went before selling the drugs to the police. In *People v. Chase,* 675 P.2d 315 (Colo.1984), the supreme court found probable cause existed to search a house when a drug dealer stated that he had to go to his source for the drugs, went to the house where he stayed for eleven minutes, and then went immediately to complete the drug transaction. The *Chase* court recognized that even though the drug dealer could have obtained the drugs from another place, such as his car or residence, the fact that he said that he needed to go to his source for the drugs established probable cause to believe that the house was his drug source.

Courts in other jurisdictions have also found probable cause under similar circumstances to search the locations to which drug dealers go during controlled drug transactions. *See, e.g., United States v. Ribeiro,* 397 F.3d 43 (1st Cir.2005); *United States v. Tellez,* 217 F.3d 547 (8th Cir.2000); *United*

States v. Lightbourne, 104 F.3d 1172 (9th Cir.1997); United States v. Corral, 970 F.2d 719 (10th Cir.1992); Moore v. State, 441 So.2d 1003 (Ala.Crim.App.1983); State v. Witwer, 642 P.2d 828 (Alaska Ct.App.1982); Chavez–Quintanilla v. United States, 788 A.2d 564 (D.C.2002); State v. Mena, 399 So.2d 149 (La.1981); Novak v. State, 349 N.W.2d 830 (Minn.1984); State v. Guthmiller, 646 N.W.2d 724 (N.D.2002).

■ Here, the broker stated that he needed to get more drugs from his source who "lived in the 'mountains' " and that he would return in about an hour with the requested amount of drugs. The broker then drove immediately to defendant's property and stopped at the garage before returning directly to the prearranged meeting place with the undercover officer. At that time, the broker explained that his source only had one gram of methamphetamine but would have two additional ounces within two hours. These facts as alleged in the affidavit are sufficient to provide a substantial basis for the issuing magistrate to conclude that probable cause existed for a valid search warrant of the garage. See People v. Hebert, supra.

Moreover, the fact that the broker was not observed speaking to defendant during the controlled drug transaction does not nullify the probable cause to search the garage for drugs and drug paraphernalia. See People v. Green, 70 P.3d 1213 (Colo.2003) (an affidavit need only establish a fair probability that officers executing a warrant will find contraband or evidence of crime at the location to be searched).

■ Indeed, there is no constitutional requirement that a search warrant name the person who owns or occupies the described premises. The Fourth Amendment requires specificity only as to the place to be searched and the thing to be seized, rather than as to the person against whom the evidence is to be used. United States v. Besase, 521 F.2d 1306 (6th Cir.1975); see also United States v. Artez, 389 F.3d 1106 (10th Cir.2004)(search warrant for defendant's home upheld notwithstanding defendant's objection that controlled drug transaction did not implicate him personally); United States v. Pinson, 321 F.3d 558 (6th Cir.2003)(similar); United

States v. Conley, 4 F.3d 1200 (3d Cir.1993) (similar); State v. Buddhu, 264 Conn. 449, 825 A.2d 48 (2003) (similar); Turner v. State, 826 A.2d 289 (Del.2003)(similar); State v. Toler, 246 Kan. 269, 787 P.2d 711 (1990)(similar); State v. Caicedo, 135 N.H. 122, 599 A.2d 895 (1991)(similar); State v. Frohlich, 506 N.W.2d 729 (N.D.1993)(similar); State v. Lodermeier, 481 N.W.2d 614 (S.D.1992)(similar).

Therefore, we conclude the affidavit was sufficient to provide a substantial basis for the issuing magistrate to conclude that probable cause existed for a valid search warrant with respect to the garage.

### B. Home

Defendant also argues that the affidavit does not support a finding of probable cause to search the home. This time we agree.

■ The affidavit did not allege that the broker approached the home or that any criminal activity occurred there. Indeed, the only reference to the home contained in the affidavit is that after following the broker down the road from the RV, a truck drove to the home while the broker went to the garage. The affidavit does not contain a description of the person in the truck or indicate that the broker contacted him or her. Therefore, no allegations exist in the affidavit linking the broker to the home or linking the home to any suspected criminal activity.

Rather, the only basis for searching the home contained within the four corners of the affidavit is the affiant's awareness, based on his training, experience, and participation "in other drug investigations," that "it is common" for drug dealers to maintain books, records, and papers relating to drug transactions "in locations used as storage facilities."

■ While an officer's "training and experience" may be considered in determining probable cause, such training and experience cannot substitute for an evidentiary nexus, prior to the search, between the place to be searched and any criminal activity. See United States v. Schultz, 14 F.3d 1093 (6th Cir.1994); United States v. Benevento, 836 F.2d 60 (2d Cir.1987), abrogated on other

grounds by *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989); *see also United States v. Nolan,* 199 F.3d 1180, 1183 (10th Cir.1999) ("we have never held that the mere observation of repetitive illegal drug activity outside a suspect's residence by itself is sufficient to establish probable cause for a search of the suspect's residence").

A division of this court has found that a companion's possession of methamphetamine while standing in the defendant's detached garage did not justify a search of the defendant's residence. *See People v. Bachofer, supra.* Likewise, other jurisdictions have found that probable cause did not exist to search a person's home because visitors were suspected of drug activity. *See United States v. Huguez–Ibarra,* 954 F.2d 546 (9th Cir.1992) (no probable cause to search residence for drugs merely because officers observed known drug runners visiting property without observing drug items taken into residence); *State v. Thieling,* 611 N.W.2d 861 (N.D.2000)(no probable cause to search residence for drugs merely because some of defendant's visitors were suspected of drug activity); *see also State v. Ratzlaff,* 255 Kan. 738, 877 P.2d 397 (1994) (although police verified informant's claim that large-scale drug operation was in progress, no probable cause to search defendant's residence because no showing that defendant was involved).

The affidavit in this case alleged that during the controlled drug transaction the broker entered only the garage on a rural property. This garage was located fifty to sixty yards from defendant's home, and the affidavit does not allege any criminal activity in the home itself or by the residents of the home. In addition, the affidavit fails to connect the broker to the residence beyond the officer's observation of his entrance onto the property. *See Mills v. City of Barbourville,* 389 F.3d 568 (6th Cir.2004) (no probable cause because affidavit did not connect residence to illegal activity or even state that person engaged in such activity lived there); *State v. Buccini,* 167 Ariz. 550, 810 P.2d 178 (1991)(no probable cause to search defendant's home because lack of evidence linking items sought with the particular suspected criminal activi-ty); *State v. Jackson,* 380 So.2d 616 (La. 1980)(even if highly probable that defendant had weapon in residence, search warrant invalid because no evidence of that weapon or the defendant was connected to crime).

The People point out that many jurisdictions have recognized that evidence is likely to be found where the dealers live. However, this argument is unpersuasive because the affidavit does not allege that the broker was a resident of the property searched. Because no one other than the broker was observed on the property during the controlled drug transaction, no nexus exists between the home or its residents and the suspected criminal activity, beyond a vague allegation of possible recordkeeping. *See People v. Kazmierski, supra.* Indeed, the broker could have been a trespasser on the property or an acquaintance of the residents who had been granted only limited access to the garage.

Furthermore, the cases cited by the People are inapposite. For example, in *People v. Hakel,* 870 P.2d 1224 (Colo.1994), the supreme court found that probable cause existed to search the defendant's house for records of drug transactions based on the affiant's personal knowledge of the defendant's habit of keeping such records. Probable cause must be established as to each separate place to be searched, and no evidence here linked the house to the suspected criminal activity. *See People v. Randolph, supra; People v. Bachofer, supra.* In fact, the affidavit in this case does not identify the residents, much less assert knowledge of their previous or observed behavior.

Accordingly, we conclude insufficient information exists within the four corners of the affidavit to support a finding of probable cause to search defendant's home.

## C. Severability

 A court may sever deficient portions of a search warrant without invalidating the entire warrant. When a warrant lists several locations to be searched, a court may suppress evidence recovered at a location for which police lacked probable cause, but admit evidence recovered at locations for which

probable cause was established. *United States v. Pitts*, 173 F.3d 677 (8th Cir.1999).

■ Under this severability doctrine, items that are illegally seized during the execution of a valid search warrant do not affect admissibility of evidence legally obtained while executing the warrant. *United States v. Hamilton*, 931 F.2d 1046 (5th Cir. 1991). All the federal circuits and many state courts have adopted the severability doctrine. *See, e.g., United States v. Angelos*, 433 F.3d 738 (10th Cir.2006); *United States v. Hill*, 322 F.3d 301 (4th Cir.2003); *United States v. Shi Yan Liu*, 239 F.3d 138 (2d Cir.2000); *United States v. Chen*, 979 F.2d 714 (9th Cir.1992); *United States v. Blakeney*, 942 F.2d 1001 (6th Cir.1991); *Marvin v. United States*, 732 F.2d 669 (8th Cir.1984); *United States v. Riggs*, 690 F.2d 298 (1st Cir.1982); *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir.1982); *United States v. Christine*, 687 F.2d 749 (3d Cir.1982); *United States v. Heldt*, 668 F.2d 1238 (D.C.Cir. 1981); *United States v. Holmes*, 452 F.2d 249 (7th Cir.1971); *Commonwealth v. Lett*, 393 Mass. 141, 470 N.E.2d 110 (1984); *Walker v. State*, 671 So.2d 581 (Miss.1995); *State v. Warren*, 226 Neb. 810, 415 N.W.2d 152 (1987); *State v. Tucker*, 133 N.H. 204, 575 A.2d 810 (1990); *State v. Pratt*, 641 A.2d 732 (R.I.1994); *State v. Cockrell*, 102 Wash.2d 561, 689 P.2d 32 (1984); *State v. Noll*, 116 Wis.2d 443, 343 N.W.2d 391 (1984). We expressly join these courts and adopt the severability doctrine in Colorado.

■ Blanket suppression is an extraordinary remedy that should be used only when the violations of search warrant requirements are so extreme that the search is essentially transformed into an impermissible general search. *United States v. Uzenski*, 434 F.3d 690 (4th Cir.2006).

■ Here, defendant only challenges the search warrant based on lack of probable cause and does not allege any such extreme violations of the warrant requirements. Therefore, we do not find that blanket suppression of all the evidence is warranted here. *See United States v. Uzenski, supra; United States v. Angelos, supra; United States v. Shi Yan Liu, supra; United States v. Chen, supra; United States v. Hamilton, supra; Marvin v. United States, supra; United States v. Wuagneux, supra; United States v. Heldt, supra.*

Because the search warrant lists several locations to be searched and we conclude that the police lacked probable cause only with respect to the home, we affirm the trial court's order denying defendant's motion to suppress the evidence found in the garage. *See United States v. Pitts, supra.* As discussed below, on remand, the trial court must consider whether the evidence seized in the home is admissible under the good faith exception to the exclusionary rule.

## II. Materiality of Omitted Facts

Defendant also contends the search warrant was invalid because the affiant omitted material facts from the affidavit upon which the warrant was issued. We disagree.

■ The omission of material facts known to the affiant when executing the affidavit may cause statements within the affidavit to be so misleading that a finding of probable cause may be deemed erroneous. An omitted fact is material for purposes of vitiating an entire affidavit only when its omission rendered the affidavit substantially misleading to the magistrate who issued the warrant. *People v. Fortune*, 930 P.2d 1341 (Colo.1997).

■ However, no requirement exists that all steps taken, all information obtained, and all statements made by witnesses during the course of an investigation be described fully in an affidavit. And any doubts must be resolved in favor of a magistrate's determination of probable cause in order to avoid creating a climate in which the police resort to warrantless searches rather than obtain a warrant before conducting a search. *People v. Fortune, supra.*

■ Here, defendant alleges that the affiant omitted the following relevant facts from the affidavit: (1) the broker was a convicted methamphetamine cook and dealer; (2) the broker possessed drugs when he initially met with the undercover officer; and (3) police officers only observed the broker go directly

to the garage without speaking to any other person, including defendant.

Assuming without deciding that these alleged facts were true and known to the affiant when executing the affidavit, their omission did not render the affidavit substantially misleading to the magistrate who issued the warrant. *See People v. Fortune, supra.* As discussed previously, the fact that the broker was a convicted methamphetamine dealer who possessed drugs when he initially met with the undercover officer does not negate the probable cause to search the premises where the broker went after he said that he was going to his source to obtain more drugs. *See People v. Chase, supra; see also United States v. Ribeiro, supra; United States v. Tellez, supra; United States v. Lightbourne, supra; United States v. Corral, supra; Moore v. State, supra; State v. Witwer, supra; Chavez–Quintanilla v. United States, supra; State v. Mena, supra; Novak v. State, supra; State v. Guthmiller, supra.* Moreover, even if the affidavit should have clarified that the officers had not seen the broker contact the person in the pickup truck, this information is relevant only to the search of the home, as to which we have already found the affidavit insufficient.

In addition, because no constitutional requirement exists that a search warrant name the person who owns or occupies the described premises, defendant's assertion that the affidavit is invalid because the affiant omitted the fact that the broker was not observed speaking to defendant is unpersuasive. *See United States v. Artez, supra; United States v. Besase, supra.*

Accordingly, we conclude the allegedly material facts omitted from the affidavit did not invalidate the search warrant.

### III. Good Faith Exception

Defendant finally contends the good faith exception to the exclusionary rule does not apply, and therefore, the evidence seized pursuant to the warrant must be excluded. However, the trial court made no finding regarding good faith. Thus, we remand for determination whether good faith exists sufficient to satisfy the statutory requirements of § 16–3–308, C.R.S.2006. *See People v. Bachofer, supra.*

When officers executing a warrant reasonably and in good faith believe that they are executing a legitimate warrant, the evidence obtained may be admissible, even if the warrant is found to be defective. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *People v. Randolph, supra.*

The good faith exception in Colorado is codified in § 16–3–308(1), C.R.S.2006, which provides that evidence should not be suppressed if it was "seized by a peace officer . . . as a result of a good faith mistake or of a technical violation." The statute presumes good faith where the "evidence was obtained pursuant to and within the scope of a warrant, unless the warrant was obtained through intentional and material misrepresentation." Section 16–3–308(4)(b), C.R.S. 2006.

Here, the trial court found probable cause existed and did not consider whether the statutory good faith exception applied. On remand, the trial court shall determine whether the evidence seized inside defendant's home is admissible under the good faith exception to the exclusionary rule. *See People v. Bachofer, supra.*

### IV. Attenuation of Statements

In addition, we note that defendant's motion to suppress related not only to the evidence seized in the garage and home, but also to his statements made as a result of the search and his arrest. Therefore, if the trial court determines on remand that the search of defendant's home was illegal because the good faith exception is inapplicable, the court must also decide whether an attenuation analysis with respect to defendant's statements is necessary. *See New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) (attenuation analysis is only appropriate where, as a threshold matter, courts determine that the challenged evidence, including a defendant's statement, is in some sense the product of illegal governmental activity); *People v. Rodriguez,* 945 P.2d 1351 (Colo.1997).

Attenuation can occur either when the causal connection is remote or when a direct causal connection exists but the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained. The penalties visited upon the government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve. *Hudson v. Michigan,* —— U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

But-for causality is only a necessary, not a sufficient, condition for suppression. Rather, but-for cause, or causation in the logical sense alone, can be too attenuated to justify exclusion. The proper inquiry is whether, granting establishment of the primary illegality, the evidence results from the exploitation of that illegality or from means sufficiently distinguishable to be purged of the primary taint. *Hudson v. Michigan, supra.*

When determining whether sufficient attenuation exists, a court must focus on three specific factors: (1) the time elapsed between the illegality and acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *United States v. Simpson,* 439 F.3d 490 (8th Cir.2006)(citing *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)); *People v. Rodriguez, supra; see, e.g., United States v. Washington,* 387 F.3d 1060 (9th Cir.2004) (the lack of a significant intervening period of time does not, in itself, require that the evidence be suppressed for want of sufficient attenuation but bears directly on the probability of taint); *United States v. Mabe,* 330 F.Supp.2d 1234 (D.Utah 2004)(applying attenuation analysis to statements made during and after unlawful search); *United States v. Hiruko,* 320 F.Supp.2d 26 (E.D.N.Y.2004) (applying attenuation analysis to statements and confessions made within one hour of unlawful search); *United States v. Lewis,* 760 F.Supp. 997 (E.D.N.Y.1990) (determining statements were admissible because no showing that fruits of unlawful search were impermissibly exploited during interrogation).

When the connection between police misconduct and evidence of a crime is sufficiently attenuated, exclusion of the evidence neither protects the constitutional principles the rule was designed to preserve, nor advances deterrence enough to justify its costs. However, that level of attenuation only occurs when the use of the illegally seized evidence falls "outside the offending officer's zone of primary interest." *United States v. Hill,* 60 F.3d 672, 679–80 (10th Cir.1995)(quoting *United States v. Janis,* 428 U.S. 433, 458, 96 S.Ct. 3021, 3034, 49 L.Ed.2d 1046 (1976)).

Here, the garage and the home were searched simultaneously by the officers executing the warrant. Because the record does not establish whether defendant's statements were made before, during, or after the lawful search of the garage, on remand the trial court must first determine whether the attenuation doctrine applies in this case. If it does, the court must engage in an attenuation analysis with respect to defendant's statements.

Accordingly, if the trial court determines the good faith exception applies and the evidence from the home is admissible, then defendant's conviction shall stand affirmed, subject to defendant's right to appeal the new suppression ruling. If the trial court determines the good faith exception does not apply, and further concludes that the evidence or statements are inadmissible after engaging in the attenuation analysis, then defendant's conviction shall be reversed and the court shall conduct a new trial without admission of the evidence illegally seized from defendant's home or defendant's statements, subject however to the People's right to appeal the suppression ruling.

The case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge WEBB concur.