COLORADO COURT OF APPEALS

 
 2016 COA 14
 
 

 

Court of Appeals No. 13CA1827
El Paso County District Court No. 10CR4313 
Honorable Thomas K. Kane, Judge

 

The People of the State of Colorado, 

Plaintiff-Appellee,

v.

Miguel Rosalie Sandoval, 

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FURMAN 
Hawthorne and Richman, JJ., concur

Announced February 11, 2016

Cynthia H. Coffman, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶1        The central issue on appeal is whether the Federal or State Constitution protects an individual’s right to possess a sawed-off (short) shotgun for self-defense. Based, in part, on precedent from the United States Supreme Court, we conclude that such a right is not protected. See District of Columbia v. Heller, 554 U.S. 570, 625 (2008); United States v. Miller, 307 U.S. 174, 178 (1939).

¶2        Defendant, Miguel Rosalie Sandoval, appeals his conviction
under section 18-12-102, C.R.S. 2015, following a bench trial, for possession of a dangerous weapon after police officers executing a search warrant for Sandoval’s home found a short shotgun in a backyard shed. Sandoval contends that the trial court erred by (1) denying his motion to suppress the short shotgun found in his shed because the search of the shed was outside the scope of the search warrant and (2) precluding him from asserting affirmative defenses based on the right to bear arms and self-defense. He also contends that the evidence was insufficient to support his conviction. Because we disagree with each of Sandoval’s contentions, we affirm his judgment of conviction.

I. Testimony About the Short Shotgun

¶3        At trial, a police detective testified about his search of Sandoval’s property pursuant to a search warrant issued after a shooting on Sandoval’s property. The detective searched the interior of Sandoval’s residence and recovered “one expended shotgun shell,” “one box of .40 caliber firearm ammunition,” and two full-length shotguns. He also searched a shed in the backyard of Sandoval’s residence and found the short shotgun that Sandoval was charged with possessing. He did not find any other short shotguns on the premises.

¶4        An expert in firearms analysis then testified. The expert had examined the short shotgun in question and testified that its barrels “were approximately thirteen and three-quarters inches.” She also testified that the spent round found in the bedroom had been fired from the right barrel of the short shotgun found in the shed.

¶5        Another detective testified that he had interviewed Sandoval
informally and then conducted a recorded interview at the police station. In the interviews, Sandoval admitted that he possessed a short shotgun and that he “thought it was on the shelf, maybe in the bedroom.” Sandoval also said that he had not purchased the short shotgun or done anything to shorten it. Instead, he said it had been left at his residence.

¶6        But, the second detective also testified that, although
Sandoval had said he possessed a short shotgun, the detective had not shown Sandoval the particular short shotgun that he was charged with possessing.

¶7          Sandoval invoked the affirmative defenses of the right to bear
arms and self-defense. He argued that he possessed the short shotgun for self-defense. But, the trial court precluded him from raising this defense at trial.

II. Motion to Suppress

¶8        We conclude that the trial court did not err by denying
Sandoval’s motion to suppress the short shotgun found in his shed because the search warrant authorized the police “to enter and search . . . the person, premises, location and any appurtenances thereto” of Sandoval’s residence.

¶9        A search warrant must describe with particularity the place to
be searched and the things to be seized to prevent unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution. See People v. Eirish, 165 P.3d 848, 852 (Colo. App. 2007) (citing Andresen v. Maryland, 427 U.S. 463 (1976)). Evidence obtained from a search that violates the Fourth Amendment is subject to the exclusionary rule. See People v. Winpigler, 8 P.3d 439, 443 (Colo. 1999).

¶10        Review of a trial court’s ruling on a motion to suppress presents a mixed question of fact and law. See People v. Bostic, 148 P.3d 250, 254 (Colo. App. 2006). Accordingly, we defer to the trial court’s factual findings unless they are clearly erroneous but review its legal conclusions de novo. See id.

¶11 We may look only to the record from the suppression hearing when considering the facts pertaining to a suppression motion. See Moody v. People, 159 P.3d 611, 614 (Colo. 2007).

¶12 Before trial, Sandoval moved to suppress the short shotgun found in the shed, arguing that the police’s search of the shed in his backyard exceeded the scope of the search warrant.

¶13 At the suppression hearing, a police detective testified that he searched Sandoval’s residence, the yards surrounding the residence, and the shed;

the shed was in the backyard very close to the residence, and, although he could not remember if there was a fence around the backyard, he described the backyard as “a defined space around the house”; and he found the short shotgun in the shed.

¶14        In evaluating whether the police’s search of the shed in Sandoval’s backyard was within the scope of the search warrant, we are guided by our supreme court’s decision in People v. Muniz, 198 Colo. 194, 597 P.2d 580 (1979), a case with very similar factual circumstances. In Muniz, the supreme court determined that, under the circumstances, the use of the term “premises” in an affidavit to a search warrant authorized the search by police of a shed, which was detached from the defendant’s residence, to find a sawed-off shotgun. Id. at 196-98, 597 P.2d at 581-82. The supreme court identified the following circumstances as leading to this conclusion: (1) the contraband in question (a sawed-off shotgun) was “portable” and “easily hidden”; (2) the police had first searched the residence, which was associated with the shed, where the sawed-off shotgun had reportedly been seen; (3) the police found other contraband in the residence, but not the sawed-off shotgun; (4) the shed was “close” to the residence in an “enclosed area” to which the defendant had “ready, expectable, and permitted access”; and (5) the police stopped their search once they found the sawed-off shotgun in the shed. Id. at 198-99, 597 P.2d at 582.

¶15        Given the similarity of the facts presented at the suppression hearing to the facts in Muniz, we conclude that the search of the shed in Sandoval’s backyard was within the scope of the search warrant. The following circumstances lead us to this conclusion: (1) the search warrant authorized a search of the residence’s “premises” and “appurtenances”; (2) the short shotgun was portable and easily hidden; (3) the police searched the residence for the short shotgun but did not find it; (4) the shed was very close to the residence in the “defined space” of the residence’s backyard; and (5) the key to the shed was found on the front porch of the residence, suggesting that Sandoval had access to the shed. See id. at 198-99, 597 P.2d at 582.

¶16        Even so, Sandoval contends, based on Muniz, that the search of the shed in his backyard was outside the scope of the search warrant because the affidavit supporting the search warrant did not include the terms “premises” and “appurtenances” in describing his residence. We disagree because the supreme court in Muniz considered terms in both the affidavit and the search warrant in determining whether the search was authorized. Id. at 196, 597 P.2d at 580. Thus, although the affidavit supporting the search warrant for Sandoval’s residence did not include the terms “premises” and “appurtenances,” because the search warrant itself did include these terms, the search of the shed was lawful.

III. Affirmative Defenses

¶17        We also conclude that the trial court did not err by precluding Sandoval from asserting affirmative defenses based on the right to bear arms and self-defense.

¶18        “We review de novo whether the evidence in the record, considered in the light most favorable to the defendant, is substantial and sufficient in both quantity and quality to warrant the giving of the affirmative defense instruction.” People v. DeWitt, 275 P.3d 728, 733 (Colo. App. 2011).

¶19        Sandoval contends that the United States Constitution’s Second Amendment and the Colorado Constitution’s article II, section 13 protect his right to possess a dangerous weapon, in this case, a short shotgun, for the purpose of self-defense. We disagree.

A. Federal Constitution

¶20        The Second Amendment to the United States Constitution reads, “[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.” But, the right to bear arms embodied in the Second Amendment “is not unlimited.” Heller, 554 U.S. at 626.

¶21        In Miller, the United States Supreme Court addressed whether the Second Amendment afforded a right to possess a short-barreled shotgun. The Court concluded:

In the absence of any evidence tending to show that possession or use of a “shotgun having a barrel of less than eighteen inches in length” at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

Miller, 307 U.S. at 178 (citation omitted).

¶22        And, in Heller, the Supreme Court considered Miller and stated that “the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.” Id. at 625. The Court then recognized a “historical tradition of prohibiting the carrying of ‘dangerous and unusual weapons.’” Id. at 627 (citation omitted).

¶23        Given the Supreme Court’s precedent in Heller, id. at 625-27, and Miller, 307 U.S. at 178, we must conclude that the Second Amendment right to bear arms does not protect an individual’s right to possess a short shotgun for self-defense.

B. State Constitution

¶24        Article II, section 13 of the Colorado Constitution reads, in
pertinent part, “[t]he right of no person to keep and bear arms in defense of his home, person and property . . . shall be called in question.” But, the right to bear arms in article II, section 13 is not unlimited, and our supreme court has held that “the state may regulate the exercise of that right under its inherent police power so long as the exercise of that power is reasonable.” Robertson v. City & Cty. of Denver, 874 P.2d 325, 328 (Colo. 1994).

¶25        We conclude that article II, section 13 does not protect an individual’s right to possess a short shotgun for self-defense because the state’s prohibition of short shotguns is a reasonable exercise of its police power. See Robertson, 874 P.2d at 328-29. Short shotguns are unusually dangerous weapons that are often used in criminality. See Rinzler v. Carson, 262 So. 2d 661, 666 (Fla. 1972) (A short shotgun is a type of weapon “which is too dangerous to be kept in a settled community by individuals, and one which, in times of peace, finds its use by [the] criminal.”); Commonwealth v. Davis, 343 N.E.2d 847, 850 (Mass. 1976) (The short shotgun “seems a most plausible subject of regulation as it may be readily concealed and is especially dangerous because of the wide and nearly indiscriminate scattering of its shot.”); State v. LaChapelle, 451 N.W.2d 689, 691 (Neb. 1990) (Short shotguns are “used almost exclusively for a criminal purpose.”). And, such dangerous and unusual weapons have traditionally been prohibited. See Heller, 554 U.S. at 627.

¶26        Nevertheless, Sandoval directs us to the supreme court’s decision in People v. Ford, 193 Colo. 459, 568 P.2d 26 (1977), which recognized an affirmative defense to the crime of possession of a weapon by a previous offender (POWPO) based on the right to bear arms in self-defense in article II, section 13. We are not persuaded that the reasoning in Ford is applicable to Sandoval’s case.

¶27        In Ford, the supreme court addressed a “flat prohibition” of citizens with a certain status — namely, felons — keeping and bearing arms. Id. at 462, 568 P.2d at 28. In this context, the supreme court determined that “the specific limitations of [article] II, section 13 must be superimposed on the [POWPO] statute’s otherwise valid language” so as to permit an affirmative defense. Id. But, unlike the POWPO statute in Ford, section 18-12-102 does not impose a “flat prohibition” on any person’s possession of a weapon in self-defense; it only restricts the type of weapon that may be possessed. Because many other types of weapons can be legally possessed for the purpose of self-defense, the state can reasonably limit article II, section 13 by prohibiting the possession of short shotguns, even for the purpose of self-defense, in section 18-12­102. See Robertson, 874 P.2d at 328.

¶28        Accordingly, because the United States and Colorado Constitutions do not protect an individual’s right to possess a short shotgun for self-defense, we conclude that the trial court did not err by precluding Sandoval from raising affirmative defenses based on the right to bear arms and self-defense. See DeWitt, 275 P.3d at 733.

IV. Sufficiency of the Evidence

¶29        We last conclude that the evidence was sufficient to support Sandoval’s conviction.

¶30        Initially, citing People v. Lacallo, 2014 COA 78, the People ask
us to apply plain error review to the question of whether the evidence was sufficient. Another division of our court, in People v. McCoy, 2015 COA 76M, ¶6, determined that sufficiency of the evidence claims are not governed by plain error review. We agree with McCoy.

¶31        On a challenge to the sufficiency of the evidence, we review de novo “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010) (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

¶32        Sandoval contends that the prosecution presented insufficient evidence that he knowingly possessed the particular short shotgun that he was charged with possessing. We disagree.

¶33        According to section 18-12-102(3), “[a] person who knowingly possesses a dangerous weapon commits a class 5 felony.” “[A] shotgun having . . . barrels less than eighteen inches long” is a dangerous weapon for the purposes of section 18-12-102. § 18-12­101(1)(i), C.R.S. 2015; see § 18-12-102(1).

¶34        We conclude that the evidence, viewed as a whole and in the light most favorable to the prosecution, was sufficient to prove that Sandoval knowingly possessed the particular short shotgun that he was charged with possessing. See Clark, 232 P.3d at 1291. We reach this conclusion based on the following evidence introduced at trial:

 Sandoval admitted that he possessed a short shotgun and that it would be found at his residence;
 the short shotgun that Sandoval was charged with possessing was found in the shed in the residence’s backyard;
 a key to the shed was found on the porch of Sandoval’s residence; and
 a spent shotgun round that had been fired from the short shotgun in question was found in the bedroom of Sandoval’s residence.

Thus, although Sandoval never specifically identified the short shotgun in question as his, it was reasonable for the court, as trier of fact, to infer that the short shotgun that Sandoval admitted to possessing was, in fact, the short shotgun that was found in the shed and that he was charged with possessing. See id.

¶35        To the extent that Sandoval contends that there was no evidence that he knew that the short shotgun in question was less than eighteen inches long, we disagree. Sandoval admitted that he possessed the short shotgun, but he claimed that he did not shorten it himself. Therefore, the court could reasonably infer that Sandoval knew that this shotgun was short enough to be illegal. See id.

V. Conclusion

¶36        The judgment of conviction is affirmed.

span>JUDGE HAWTHORNE and JUDGE RICHMAN concur.